**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| MOHAMED ALSHOURBAGY, derivatively on behalf of Nominal Defendant VERU INC., <br><br> Plaintiff, <br><br> v. <br><br> MITCHELL S. STEINER, MICHELE J. GRECO, LUCY LU, GRACE S. HYUN, HARRY D. FISCH, MARIO A. EISENBERGER, and MICHAEL L. RANKOWITZ, <br><br> Defendants, <br><br> and <br><br> VERU INC., <br><br> Nominal Defendant. | Case No. <br><br> **VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Mohamed Alshourbagy ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant Veru Inc. ("Veru" or the "Company"), against certain members of its Board of Directors (the "Board") and certain of its executive officers, seeking to remedy defendants' breaches of fiduciary duties and violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's allegations are based on personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Veru with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

1

### I.  NATURE AND SUMMARY OF THE ACTION

1. Veru is a biopharmaceutical company that focuses on the development and commercialization of novel medicines for the management of breast and prostate cancer. Amid the COVID-19 pandemic, Veru decided to test the efficacy of its existing anti-cancer drug, sabizabulin, in treating COVID-19 and other viral diseases related to acute respiratory distress syndrome ("ARDS").

2. Following a successful Phase 2 trial, Veru initiated a Phase 3 trial to assess the efficacy and safety of sabizabulin in treating COVID-19. In April 2022, after only 204 of the expected 300 patients for Veru's Phase 3 clinical trial of sabizabulin were enrolled, the Company halted the trial, citing the "overwhelming evidence of efficacy." Repeatedly, the Individual Defendants (defined herein) emphasized that "the FDA agreed that no additional efficacy studies would be required to support an EUA application [Emergency Use Authorization] or a new drug application (NDA)."

3. Contrary to these assurances, the Food and Drug Administration (the "FDA") was primarily concerned with the small sample size when considering approval of Veru's EUA application for sabizabulin.

4. On November 9, 2022, the FDA convened a meeting of the Pulmonary-Allergy Drugs Advisory Committee (the "AdCom") to discuss approval of Veru's request for EUA for sabizabulin. The AdCom voted against approval of the EUA by an 8-5 margin, citing concerns from the small study size. The meeting publicly revealed that the FDA had repeatedly emphasized that at least 500 patients were necessary to adequately demonstrate that the benefits of sabizabulin outweigh its risks, yet the Company only sought to enroll 300 patients. On this news, the Company's stock price fell approximately 54% to close at $6.97 per share on November 10, 2022, on unusually heavy trading volume.

5. On March 2, 2023, Veru announced that the FDA ultimately rejected its EUA request for sabizabulin. The FDA's report showed that the Company reduced its study size to 200 patients, ignoring the FDA's express concerns that this was insufficient to demonstrate the drug's efficacy. On this news, the Company's stock price fell approximately 36% to close at $2.42 per share on March 3, 2023, on unusually heavy trading volume.

6. These revelations precipitated the filing of a securities class action in the Southern District of Florida against Veru and certain of the defendants named herein, captioned *Ewing v. Veru Inc. et al.*, Case No. 1:22-cv-23960-KMW-LMR (the "Securities Class Action").

7. For these reasons and as set forth in greater detail herein, including the Board's refusal to respond to Plaintiff's demand to investigate these matters, Plaintiff now files this action against the Individual Defendants who abandoned their fiduciary duties and should now be held accountable for the financial and reputational harm suffered by Veru and its shareholders.

## II. JURISDICTION AND VENUE

8. This Court has original jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332. Subject matter jurisdiction is proper because the amount in controversy exceeds $75,000, exclusive of interest and cost, and the named Plaintiff and Defendants are citizens of different states.

9. This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District.

### III.   PARTIES

**Plaintiff**

11.   Plaintiff Mohamed Alshourbagy currently owns 1,280 shares of Veru common stock and has continuously held his Veru shares at all relevant times. He is a resident of Michigan.

**Nominal Defendant**

12.   Nominal Defendant Veru is a Wisconsin corporation with its principal executive offices located at 2916 N. Miami Avenue, Suite 1000, Miami, Florida 33127. The Company's common stock trades on the Nasdaq Capital Market ("Nasdaq") under the symbol "VERU."

**Defendants**

13.   Defendant Mitchell S. Steiner ("Steiner") has served as a director of the Company and as the Company's Chief Executive Officer ("CEO") and President since October 2016 and as Chairman of the Board since March 2018. Steiner is a resident of Florida.

14.   Defendant Michele J. Greco ("Greco") has served as the Company's Chief Financial Officer ("CFO") since March 2018 and as its Chief Administrative Officer since December 2017. Greco is a resident of Illinois.

15.   Defendant Lucy Lu ("Lu") has served as a director of the Company since May 2021. Lu serves as Chair of the Audit Committee and as a member of the Compensation Committee. Lu is a resident of New York.

16.   Defendant Grace S. Hyun ("Hyun") has served as a director of the Company since August 2020. Hyun serves as a member of the Nominating and Corporate Governance Committee. Hyun is a resident of New York.

17.   Defendant Harry D. Fisch ("Fisch") has served as a director of the Company since October 2016, as Vice Chairman of the Board since March 2018, and as the Company's Chief Corporate Officer since January 2018. Fisch is a resident of Florida.

18. Defendant Mario A. Eisenberger ("Eisenberger") has served as a director of the Company since October 2016. Eisenberger serves as Chair of the Nominating and Corporate Governance Committee and as a member of both the Audit Committee and the Compensation Committee. Eisenberger is a resident of Maryland.

19. Defendant Michael L. Rankowitz ("Rankowitz") has served as a director of the Company since March 2018. Rankowitz serves as Chair of the Compensation Committee and as a member of both the Nominating and Corporate Governance Committee and the Audit Committee. Rankowitz is a resident of New York.

20. Defendants Steiner, Greco, Lu, Hyun, Fisch, Eisenberger, and Rankowitz are sometimes referred to herein as the Individual Defendants.

## IV. DUTIES OF THE INDIVIDUAL DEFENDANTS

21. By reason of their positions as officers, directors, and/or fiduciaries of Veru and because of their ability to control the business and corporate affairs of Veru, at all relevant times, the Individual Defendants owed Veru and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage Veru in a fair, just, honest, and equitable manner. The Individual Defendants were required to act in furtherance of the best interests of Veru and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interests or benefit. Each director and officer of the Company owes to Veru and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

22. The Individual Defendants, because of their positions of control and authority as directors and/or officers of Veru, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial,

and directorial positions with Veru, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

23. To discharge their duties, the officers and directors of Veru were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company. By virtue of such duties, the officers and directors of Veru were required to, among other things:

> (a) Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;
>
> (b) Exercise good faith to ensure that the Company operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;
>
> (c) Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and
>
> (d) When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

## V. SUBSTANTIVE ALLEGATIONS

### A. Background

24. Veru is a biopharmaceutical company that focuses on the development and commercialization of novel medicines and therapeutics for the treatment and management of varieties of breast and prostate cancer. One such oncological therapeutic is called sabizabulin (VERU-111) an oral anti-tubulin, which is a drug that inhibits microtubule activity and results in cell-cycle arrest.

25. Sabizabulin was initially developed to treat a variety of prostate cancers. However, at the start of the pandemic, Veru began experimenting with the drug to determine its efficacy in

combatting the COVID-19 virus and other viral pathogens related to ARDS. Sabizabulin is intended to block the transport of viral COVID-19 particles within cells to prevent the viral pathogen from assembling and replicating itself.

26. On February 8, 2021, Veru announced the results of a Phase 2 trial to study the efficacy and safety of sabizabulin to treat COVID-19. Based on a study of 39 patients, Veru announced that the trial showed a statistically significant 82% reduction in mortality versus placebo with no treatment-related adverse events.

    **B.    The Individual Defendants Cause the Company to Issue Materially Misleading Statements Concerning the Efficacy of Sabizabulin**

27. On March 1, 2021, the Individual Defendants caused Veru to issue a press release announcing that the Company "Received FDA Agreement" for a Phase 3 study of sabizabulin to treat COVID-19. The press release represented:[1]

> Veru Inc. . . . today announced that ***the FDA agreed in an End of Phase 2 meeting, to advance VERU-111 into a Phase 3 registrational clinical study*** based on clinically meaningful benefits observed with VERU-111 treatment in the recently completed double-blind, randomized, placebo-controlled Phase 2 clinical trial evaluating oral, once-a-day dosing of VERU-111 versus placebo in approximately 40 hospitalized COVID-19 patients at high risk of ARDS . . . .
>
> With a similar trial design to the completed positive Phase 2 study, the Phase 3 clinical registration trial design will evaluate daily oral doses of VERU-111 versus placebo with the primary efficacy endpoint of proportion of patients alive at Day 29. ***It is expected that the Phase 3 clinical trial will be conducted in approximately 400 hospitalized who have SARS-CoV-2 virus infection and are at high risk for ARDS at a 2:1 ratio between the VERU-111 (approximately 267 patients) and placebo (approximately 133 patients) treated groups***.

28. On May 12, 2021, the Company held a conference call in connection with its second quarter 2021 financial results. During the call, defendant Steiner represented that the FDA agreed with the 300-patient study size, stating:

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

7

>The company was granted an expedited end of Phase 2 meeting with FDA to discuss the next steps, including the Phase 3 clinical registration trial design for sabizabulin COVID-19 program. ***The FDA agreed upon sabizabulin for the COVID-19 Phase 3 trial as a double-blind, multi-center, multinational randomized 2:1 placebo-controlled trial, evaluating daily oral doses of 9-milligrams of sabizabulin for up to 21 days versus placebo in 300 hospitalized COVID-19 patients, who had high risk for ARDS.*** There will be 200 subjects who will be treated with sabizabulin and 100 subjects who will receive placebo.

29. On May 11, 2022, the Individual Defendants caused Veru to issue a press release detailing the outcome of the Company's pre-EUA meeting with the FDA which took place on May 10, 2022. According to that press release, the "FDA Agree[d] that No Additional Efficacy Studies or Safety Data are Required to Support a Request for EUA." Additionally, it stated, in relevant part:

>***FDA agreed that the Phase 3 COVID-19 study*** that was stopped by the Independent Data Monitoring Committee for overwhelming efficacy ***is sufficient to support the efficacy portion of a request for EUA submission*** and for an NDA submission.
>
>***FDA agreed that the current safety data available for sabizabulin is sufficient to support the safety portion of a request for EUA submission***. FDA informed the Company that additional safety data that would be collected during the use of sabizabulin under the EUA, if granted, will be sufficient to support an NDA submission, and furthermore, that ***no additional safety clinical studies are required.***

30. On May 12, 2022, the Individual Defendants caused Veru to file its quarterly report with the SEC for the period ended March 31, 2022. It stated, in relevant part:

>On May 10, 2022, the Company had a pre-Emergency Use Authorization (EUA) meeting with the FDA to discuss next steps including the submission of an EUA application regarding sabizabulin for COVID-19. The outcome of this meeting was: (i) the FDA agreed that no additional efficacy studies were required to support an EUA application or a new drug application (NDA); and (ii) the FDA agreed that no additional safety data was required to support an EUA application and that collection of safety data under the EUA will satisfy the safety requirement for an NDA. The FDA agreed that the request for the EUA is supported by efficacy and safety from our positive Phase 3 COVID-19 study in hospitalized moderate to severe COVID-19 patients who are at high risk for ARDS and death and no additional clinical trials are required to support an NDA submission. We plan to submit the EUA application in the second quarter of calendar year 2022.

31. On August 11, 2022, the Individual Defendants caused Veru to file its quarterly report with the SEC for the period ended June 30, 2022. It stated, in relevant part:

> On May 10, 2022, the Company had a pre-Emergency Use Authorization (EUA) meeting with the FDA to discuss next steps including the submission of an EUA application regarding sabizabulin for COVID-19. The outcome of this meeting was: (i) *the FDA agreed that no additional efficacy studies were required to support an EUA application or a new drug application (NDA)*; and (ii) *the FDA agreed that no additional safety data was required to support an EUA application and that collection of safety data under the EUA may satisfy the safety requirement for an NDA*. The *FDA agreed that the request for the EUA is supported by efficacy and safety from our positive Phase 3 COVID-19 study in hospitalized moderate to severe COVID-19 patients who are at high risk for ARDS and death and no additional clinical trials are required to support an NDA submission. On June 7, 2022, the Company submitted a request for FDA emergency use authorization*. On July 6, 2022, the Company announced the publication of the results from the Phase 3 COVID-19 study evaluating the efficacy and safety of oral sabizabulin in The New England Journal of Medicine Evidence.

32. The above statements and financial information provided by the Company were materially misleading because they failed to disclose that: (i) the FDA had advised that a study population of at least 500 patients was necessary for the Company's Phase 3 trial; (ii) as a result of the Company's failure to enroll sufficient patients, the sabizabulin Phase 3 COVID-19 study did not demonstrate adequate evidence of efficacy; and (iii) as a result, there was a substantial risk that the FDA would reject the Company's EUA request for sabizabulin.

C.    **The Truth Begins to Emerge**

33. On November 9, 2022, the FDA convened a meeting of the AdCom to review Veru's EUA application for sabizabulin. The AdCom voted to reject EUA approval of sabizabulin by an 8-5 margin. The general consensus of the AdCom, as noted by Dr. David Au, the meeting's chairperson, was that "the number [of patients] needed to change the outcome of the trial is

9

relatively small and speaks to the underlying instability in the [study's] estimate."[2] Additionally, "the Committee also agreed that the validity and strength of the data in Study 902 [(i.e., the sabizabulin phase 3 study)] are questionable and insufficient to determine efficacy of VERU-111 due to the uncertainties raised by the Agency."[3]

34. During the meeting, Dr. Robert Busch, an FDA Medical Officer made comments making clear that the Individual Defendants were on notice that the small study size was insufficient:

> It's worth noting that communications between the division and the sponsor highlighted repeatedly that the size of the safety database was small compared to other products which had been granted EUA [Emergency Use Authorization], and ***that the division proposed that at least 500 subjects treated with Veru-111 would provide a more robust characterization of both effectiveness and safety in the context of a possible clinical benefit and any potential safety concern observed.***

35. As a result, the Committee did not find that the benefits of Veru-111 outweigh the risks, and many of the members of the panel cited the small sample size. For example, Dr. Pamela Shaw stated, "I really think I do need to see an additional trial to get that number exposed to the 500 or so; that is what the FDA was generally comfortable with."

36. On this news, the Company's stock price fell approximately 54% to close at $6.97 per share on November 10, 2022, on unusually heavy trading volume.

37. On February 24, 2023, the FDA declined to grant Emergency Use Authorization for sabizabulin and made clear that the FDA had advised against reducing the study population from 300 to 210. The FDA's report stated:

---

[2] U.S. Food and Drug Administration, *November, 9 2022 Meeting of the Pulmonary-Allergy Drugs Advisory Committee (PADAC)*, YouTube (Nov. 9, 2022), https://youtu.be/7uMTrZ1lSsY?t=24778.

[3] U.S. Food and Drug Administration, *Final Summary Minutes of the Pulmonary-Allergy Drugs Advisory Committee Meeting* (Nov. 9, 2022), https://www.fda.gov/media/165131/download.

> To support the sample size reduction to 210 subjects (140 subjects in the Veru-111 treated group and 70 subjects in the placebo treated group), the Sponsor cited calculations based on assumptions from the Phase 2 study….The Agency continued to caution against this change, noting that there was considerable uncertainty in the Phase 2 study results relied upon for these calculations. ***The Agency also raised concerns regarding whether the resulting limited safety database would be sufficient to characterize the known and potential risks associated with Veru-111. However, the Sponsor moved forward with this reduction.***

38. On March 2, 2023, Veru announced that the FDA ultimately rejected its EUA request for sabizabulin. On this news, the Company's stock price fell approximately 36% to close at $2.42 per share on March 3, 2023, on unusually heavy trading volume.

## VI.   DAMAGES TO THE COMPANY

39. As a direct and proximate result of the Individual Defendants' conduct, Veru has been seriously harmed and will continue to be. Such harm includes, but is not limited to, the following:

   (a) Legal fees incurred in connection with the Securities Class Action;

   (b) Any funds paid to settle the Securities Class Action; and

   (c) Costs incurred from compensation and benefits paid to defendants who have breached their duties to Veru.

40. In addition, Veru's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired. The Company still has not fully admitted to the nature of its false statements and the true condition of its business. The credibility and motives of management are now in serious doubt.

41. The actions complained of herein have irreparably damaged Veru's corporate image and goodwill. For at least the foreseeable future, Veru will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal

11

behavior and have misled the investing public, such that Veru's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII. DERIVATIVE AND DEMAND ALLEGATIONS

42. Plaintiff brings this action derivatively in the right and for the benefit of Veru to redress injuries suffered, and to be suffered, by Veru as a direct result of the wrongdoing alleged herein. Veru is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

43. Plaintiff will adequately and fairly represent the interests of Veru in enforcing and prosecuting its rights.

44. Plaintiff has continuously been a shareholder of Veru at times relevant to the wrongdoing complained of and is a current Veru shareholder.

45. When this action was filed, Veru's Board of Directors consisted of Defendants Steiner, Fisch, Eisenberger, Hyun, Lu, and Rankowitz.

46. On May 18, 2023, Plaintiff made a demand on the Board to investigate and remedy the violations of law described herein as required by Wisconsin law. Plaintiff's demand states that Alshourbagy has owned Veru shares continuously at all relevant times. The demand alleges that, as detailed above, Veru's internal controls and procedures regarding clinical trials and regulatory submissions were inadequate and that its public disclosures concerning such clinical trials and regulatory submissions were inaccurate.

47. On August 15, 2023, the Company's counsel responded to the demand, stating that because the bases for Plaintiff's demand are "the subject of a pending securities class action," the Board will only "consider . . . [Plaintiff's] demand once that case has concluded." The Company's response is devoid of any steps taken by the Board, as the demand requested, to "investigate whether any of Veru's officers and directors committed non-exculpable breaches of fiduciary

duties or other violations of applicable law." Rather, the Company responded that Plaintiff's demand is "neither refused nor rejected."

48. Under Wisconsin law, the Board was required to appropriately respond to the Demand within 90 days of receipt. *See* Wis. Stat. § 180.0742.

49. The pending Securities Class Action does not obviate the Board's investigation into the Individual Defendants acts or failures to act. The Board neither delegated an investigation to a special litigation committee of directors nor engaged legal and/or financial experts. These failures are not a proper exercise of business judgment, thus Veru's response to Plaintiff's Demand was not appropriate. Therefore, Plaintiff has standing to sue derivatively.

50. The Board's indefinite deferral of the Demand may foreclose any recovery, as the applicable statute of limitations period for the Company's claims could expire while the Securities Class Action is pending. The actions by the Board cannot be reasonably interpreted to be in the best interests of the Company. Thus, the Board's actions constitute a wrongful refusal of the Demand.

## COUNT I

### Against Individual Defendants for Breach of Fiduciary Duty

51. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

52. Each Individual Defendant owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Veru's business and affairs, particularly with respect to issues as fundamental as public disclosures.

53. The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. The Individual Defendants

intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Veru.

54. In breach of their fiduciary duties owed to Veru, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

55. In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly overstate the efficacy of sabizabulin and the Company's overall prospects.

56. As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Veru has sustained and continues to sustain significant damages. Including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets. As a result of the misconduct alleged herein, defendants are liable to the Company.

## COUNT II

### Against Defendants Steiner and Greco for Contribution for Violation of Section 10(b) of the Exchange Act and Rule 10b-5

57. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

58. The conduct of defendants Steiner and Greco, as described herein, has exposed Veru to significant liability under various federal and state securities laws by their disloyal acts. The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein. If the Company is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the defendants as alleged herein, who have caused the

Company to suffer substantial harm through their disloyal acts.  The Company is entitled to contribution and indemnification from these Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

59.     As officers, directors and otherwise, defendants Steiner and Greco had the power or ability to, and did, control or influence, either directly or indirectly, the Company's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated §10(b) of the Exchange Act and SEC Rule 10b-5.

60.     Defendants Steiner and Greco are liable under §21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.

61.     Defendants Steiner and Greco have damaged the Company and are liable to the Company for contribution.

62.     No adequate remedy at law exists for Plaintiff by and on behalf of the Company.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of Veru, demands judgment as follows:

A.      Declaring that Plaintiff may maintain this action on behalf of Veru and that Plaintiff is an adequate representative of the Company;

B.      Against all of the Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

C.      Declaring that Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Veru;

  D. Directing Veru to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Veru and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

    1. a proposal to strengthen the Company's controls over financial reporting;

    2. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

    3. a proposal to strengthen Veru's oversight of its disclosure procedures;

    4. a provision to control insider transactions; and

    5. a provision to permit the stockholders of Veru to nominate at least three candidates for election to the Board.

  E. Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that Plaintiff on behalf of Veru has an effective remedy;

  F. Awarding to Veru restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the Defendants;

  G. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

  H. Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: October 9, 2023

By: /s/ Leo W. Desmond
Leo W. Desmond, Esquire
Florida Bar Number 0041920
**DESMOND LAW FIRM, P.C.**
601 21st Street, Suite 300
Vero Beach, Florida 32960
Telephone: 772-231-9600
Email: lwd@desmondlawfirm.com

**GLANCY PRONGAY & MURRAY LLP**
Benjamin I. Sachs-Michaels
745 Fifth Avenue
New York, New York 10151
Telephone: (212) 935-7400
E-mail: bsachsmichaels@glancylaw.com

-and-

Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
E-mail: rprongay@glancylaw.com

*Counsel for Plaintiff*